## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**ROBERT STEWART**
**755 Burton Road**
**Cumberland, Ontario k4B 1P7**
                              **Plaintiff,**

v.

**E.S. INVESTMENT, INC.**
  **Serve:  Aneaka English, President**
          **210 North Lee Street**
          **Suite 103**
          **Alexandria, VA 22314**

and

**WHOLE SALE REAL ESTATE, LLC.**
  **Serve:  Aneaka English, Member**
          **210 North Lee Street**
          **Suite 103**
          **Alexandria, VA 22314**

and

**ANEAKA ENGLISH, INDIVIDUALLY**
          **210 North Lee Street**
          **Suite 103**
          **Alexandria, VA 22314**

                              **Defendants.**

**VERIFIED COMPLAINT**

**DEMAND FOR JURY TRIAL**

**CASE NO. _____**

For its Verified Complaint against Defendants, Plaintiff states and alleges the following:

## NATURE OF ACTION

This action stems from certain real estate investments gone wrong. In or around June

2013, Plaintiff first entered into certain real estate investments with Defendants. Plaintiff's funds

were to be held in an escrow account under the possession and control of Defendants, specifically Defendant Aneaka English. However, when Defendants were unable to perform as agreed, Plaintiff properly requested a refund of all the money Defendants were allegedly holding in an escrow account that was controlled exclusively by Defendants. Despite repeated requests and repeated promises, Defendant failed to provide a refund to Plaintiff.

## PARTIES AND STATEMENT OF JURISDICTION AND VENUE

1.      Plaintiff Robert Stewart ("Plaintiff") is a real estate investor with his residence located in Ontario, Canada.

2.      Upon information and belief, Defendant Aneaka English is a real estate broker who does significant business, and resides, in the District of Columbia.

3.      Upon information and belief, Defendant E.S. Investments, Inc. ("Defendant ES") is a corporation that by its own admission does significant business in the District of Columbia but has its principal place of business located in the Commonwealth of Virginia.

4.      Upon information and belief, Defendant Whole Sale Real Estate, LLC ("Defendant WS") is a limited liability company that by its own admission does significant business in the District of Columbia but with its principal place of business located in the Commonwealth of Virginia.

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 in that the amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. § 1332 and there is diversity of citizenship between Plaintiff and Defendants.

6.      This Court has personal jurisdiction over Defendants, who are registered in, do business in, are managed from, and/or have principals who reside in the District of Columbia.

7.      Venue is proper under 28 U.S.C. § 1391 (b) & (c).

2

## RELATIONSHIP BETWEEN DEFENDANTS

8.     According to its website, Defendant WS "is a real estate investment research company that researches and sells lucrative real estate investments to real estate investors, developers, builders and contractors." The real estate investments include real property located in Washington, DC. Defendant WS would negotiate with real property owners to be the only company with the ability to list the owner's property. In other word, the real properties available through Defendant WS could not be found anywhere else and only through Defendant WS could an investor purchase the listed property.

9.     Once an investor located a real property that was of interest on Defendant WS's, the investor would bid on the real property. According to Defendant WS's website, the bidding process would remain open for 30 days. If the winning investor made a bid of $3,000 for a $60,000 property, the total amount that the investor would pay for the property is $63,000.00. Once a bid has been accepted, Defendant WS would send the contract documents to the investor. Once Defendant WS received the executed contract documents, the investor would have 24 hours to pay a $3000 deposit. Within 20 days of executing the contract documents and paying the deposit, the investor would need to close on the property. The investor may find an unrelated financing company or may use Defendant WS's "preferred lender," which is Defendant ES.

10.     According to its website, Defendant ES is a real estate investment firm servicing all fifty states and the District of Columbia. Defendant ES is the preferred lender of Defendant WS.

11.     Upon information and belief, Defendant English is the founder and president of Defendant ES and is a member of Defendant WS. By their own admissions, Defendants have clients that reach far beyond the borders of the United States and they have "provided a turnkey

3

process for assisting clients in the redevelopment of Richmond, VA, Northern, VA, Charleston, SC , and Washington, DC."

## RELEVANT FACTS

12. In early 2013, Plaintiff became acquainted with Defendants through an investment associate located in Canada. Plaintiff contacted Defendants in early 2013 and spoke with Defendant English regarding possible investments. Defendant English made clear to Plaintiff that she, through Defendant WS and Defendant ES, would locate possible real estate investments and would even locate financing for Plaintiff.

13. In or around April 2013, Defendant English contacted Plaintiff with an investment opportunity for a real property being renovated in Richmond, Virginia. Defendant English explained that Plaintiff would provide a loan to Defendant ES in the amount of Forty Thousand Dollars ($40,000.00). Defendant ES would in turn invest the funds into renovating the real property in Richmond (the "Richmond Project"). Defendants explained that after the renovations were complete, Plaintiff would receive a return on investment ("ROI") of Ten Thousand Dollars ($10,000.00) in addition to his initial $40,000.00 loan.

14. On or about May 7, 2013, Plaintiff executed a written agreement with Defendants whereby Plaintiff would invest Forty Thousand Dollars ($40,000.00) in the Richmond Project through Defendant ES. The agreement made clear that Plaintiff would receive his initial investment and a Ten Thousand Dollar ($10,000.00) ROI in October 2013. On or about May 8, 2013, Plaintiff sent the $40,000.00 to Defendants.

15. Upon information and belief, Defendants invested Plaintiff's $40,000.00 loan into the Richmond Project.

16. In June 2013, Plaintiff along with his investment associate, Archie Robertson, flew to the United States to meet with Defendants. Defendants showed certain investment

4

opportunities to Plaintiff and Mr. Robertson. First, Plaintiff and Mr. Robertson accompanied Defendants to South Carolina to view certain real estate investments there. Next, Plaintiff and Defendants travelled to Washington, DC to view multiple real property investment opportunities. Finally, Plaintiff and Defendants went to Virginia to view and assess the Richmond Project.

17.     When Plaintiff returned to Canada, Plaintiff decided to invest in a Washington, DC property located at 518 R Street, NW, Washington, DC 20001 (the "DC Property"). To consummate the deal, Plaintiff executed the appropriate documents and sent them to Defendants

18.     On or about June 11, 2013 and August 20, 2013, Plaintiff sent Seven Thousand Nine Hundred and Ninety Dollars ($7,990.00) and Thirty Two Thousand Dollars ($32,000.00), respectively, to Defendants to be held in the Escrow Account until Plaintiff attended settlement on the DC Property.

19.     However, after sending the funds to Defendants, Plaintiff decided against purchasing the DC Property due to high finder's fees and Plaintiff's perceived risks. As such, Defendants agreed to hold the DC Property funds in the Escrow Account until Plaintiff decided on another investment.

20.     Plaintiff reviewed further investments online using Defendant WS's website as instructed by Defendant English. Plaintiff identified two properties in Charleston, South Carolina (the "South Carolina Properties") that were of interest to him.

21.     In or around October 2013, Plaintiff decided to invest in the South Carolina Properties, which were located at 205 and 207 Romney Court, Charleston, South Carolina.

22.     Plaintiff's agreement with Defendants called for Defendant ES to find financing for Plaintiff to purchase the South Carolina properties. To consummate the agreement, Plaintiff

5

completed all the required paperwork and sent Fifty Thousand Dollars ($50,000.00) to Defendants to be held in the Escrow Account.

23.    However, in October 2013, Defendants failed to pay as agreed. It was not until March 28, 2014 that Defendants allegedly credited Fifty Thousand Dollars ($50,000.00) to an escrow account (the "Escrow Account") for Plaintiff's benefit. The Escrow Account, however, was, and is controlled by Defendants, specifically, Defendant English.

24.    At the time that Plaintiff sent the funds for the South Carolina Properties, Defendants should have had Eighty Nine Thousand Nine Hundred and Ninety Dollars ($89,990.00) in the Escrow Account for the benefit of Plaintiff.

25.    However, Plaintiff learned that his initial loan and the ROI had not been credited to the Escrow Account as agreed by the parties. Defendants assured Plaintiff that he would receive the $50,000.00 credit to the Escrow Account. As such, Plaintiff continued with his investment plans.

26.    The parties agreed that closing on the South Caroline Properties would occur in or around December 2013. However, beginning in early December, Defendants first informed Plaintiff of title issues with the South Carolina properties that prevented closing on the properties.

27.    The title issues continued through January 2014. Even after those issues ended, Defendants were still not able to close on the South Carolina Properties. In addition, Defendants still failed to credit Plaintiff with his initial investment and ROI for the Richmond Project.

28.    It was not until March 28, 2014 that Defendants finally credited Plaintiff with his initial investment and ROI from the Richmond Project. Even then, Defendant ES had not found

6

financing for Plaintiff as agreed and Defendants were still not ready, willing, and able to close of the South Carolina Properties.

29.     In or around May 2014, Plaintiff became disillusioned with Defendants' ability to carry out the terms of the Agreement regarding the South Carolina Properties.

30.     Plaintiff also had growing concerns that his funds were not in the Escrow Account and/or being safeguarded by Defendants as Defendants claimed.

31.     On or about June 10, 2014, Plaintiff informed Defendants via email that he had lost confidence in Defendants' ability to get the deal done and therefore wanted a full refund of all of his money, i.e., One Hundred and Thirty Nine Thousand Nine Hundred and Ninety Dollars ($139,990.00), that was allegedly being held in the Escrow Account for the benefit of Plaintiff.

32.     On the same date, Defendants responded to Plaintiff's email stating that they would "provide [him] a full accounting of [his] funds as well as review the contracts and prepare the appropriate release."

33.     On the same date, Plaintiff received an email from Adrena Starnes from Defendant ES requesting that Plaintiff complete an "Escrow Refund Request Form" and stating that Plaintiff's request for a refund would take approximately 7-10 days.

34.     Plaintiff completed the Escrow Refund Request Form and sent it back via email, however, Defendants failed to send Plaintiff a refund as stated in Defendant ES's June 10th email.

35.     Instead, Defendants sent an email to Plaintiff stating that his "balance [as reflected in the Statement of Account] has not changed and [his] funds will be wired to [him] because the [refunds] are a large amount." Defendants also stated that they would "send

7

[Plaintiff] a confirmation as well as a final statement." A true and correct copy of the Statement of Account is attached hereto as *Exhibit A*.

36. On or about October 17, 2014, Plaintiff caused a demand letter to be sent to Defendants demanding a full refund of his money.

37. Defendants agreed to send Plaintiff his money only upon Plaintiff executing a settlement and release agreement. Although Plaintiff agreed to sign the settlement and release agreement, Defendants failed to refund Plaintiff's money.

38. As of the filing of this Verified Complaint, Defendants have failed to send any of the funds allegedly being held in the Escrow Account for the benefit of Plaintiff.

39. Upon information and belief, Defendants used Plaintiff's funds for their own benefit.

## COUNT I
### (Breach of Contract)

40. Plaintiff restates the allegations of paragraphs 1 through 39 of its Complaint as though fully set forth herein.

41. The Agreement between Plaintiff and Defendants is a valid, binding, and enforceable written contract.

42. Plaintiff performed his obligations under the Agreement, including properly terminating the agreement for a full refund of the funds paid to Defendants.

43. Defendant, however, failed to perform its obligation under the Agreement by failing to find financing for Plaintiff, failing to close on the South Carolina Properties as agreed, and failing to give Plaintiff a full refund of the amounts paid by Plaintiff to Defendants.

44. Defendants' failures as stated above constitute a breach of the Agreement.

8

45.     As a direct and proximate result of Defendants' breach of the Agreement, Plaintiff has been injured and continues to suffer further injury.

**WHEREFORE**, Plaintiff requests that this Court enter judgment in its favor and against Defendants in the amount of One Hundred and Thirty Nine Thousand Nine Hundred and Ninety Dollars ($139,990.00) or such other amount that Plaintiff proves at trial, together with interest, legal fees, costs, and disbursements of this action.

## COUNT II
### In the Alternative
### (Quantum Meruit)

46.     Plaintiff restates the allegations of paragraphs 1 through 45 of its Complaint as though fully set forth herein.

47.     Plaintiff paid a sum certain to Defendants to purchase property from Defendants.

48.     Defendants accepted, used and enjoyed the funds paid by Plaintiff.

49.     Defendants had reasonable notification that Plaintiff expected a full refund of his funds should Defendants fail to deliver the properties to Plaintiff as stated in their agreement.

50.     Defendants failed to deliver the properties to Plaintiff but have failed to refund Plaintiff's funds to him.

**WHEREFORE**, Plaintiff requests that this Court enter judgment in its favor and against Defendant in the amount of One Hundred and Thirty Nine Thousand Nine Hundred and Ninety Dollars ($139,990.00) plus a civil penalty, or such other amount that Plaintiff proves at trial, together with interest, legal fees, costs, and disbursements of this action.

9

## COUNT III
### (Breach of Fiduciary Duties)

51.     Plaintiff restates the allegations of paragraphs 1 through 50 of its Complaint as though fully set forth herein.

52.     At all times relevant to this action, Defendants acted as real estate brokers and agents of Plaintiffs and therefore had fiduciary duties towards Plaintiff.

53.     Defendants breached their fiduciary duties by self-dealing; commingling and/or misappropriating Plaintiff's funds; neglecting the contract for the sale of the properties; failing to act in Plaintiff's best interest; misrepresenting and/or omitting material statements of fact regarding the state of the of the contract for the purchase of the properties and Defendants' financial condition; rendering bad business advice regarding investment opportunities; and/or misusing its superior position by failing to release Plaintiff's funds from escrow.

54.     Defendants failed to make Plaintiff aware of all the circumstances surrounding his purchase of the properties.

55.     Defendants further failed to advise Plaintiff of the status of his funds placed into the Escrow Account.

56.     Finally, Defendants used funds placed in the Escrow Account for the benefit of Plaintiff for their own purposes.

57.     Defendants' actions are the proximate cause of Plaintiff's damages.

58.     Plaintiff has been, and continues to be damaged, by Defendants' actions.

**WHEREFORE**, Plaintiff requests that this Court enter judgment in its favor and against Defendants in the amount of One Hundred and Thirty Nine Thousand Nine Hundred and Ninety Dollars ($139,990.00) plus a civil penalty, or such other amount that Plaintiff proves at trial,

together with interest, legal fees, costs, and disbursements of this action. Plaintiff further seeks judgment for three times the amount of Defendants' profits or Plaintiff's damages, whichever is greater, due to the nature of Defendants' conduct.

## COUNT IV
### (Unjust Enrichment)

59.    Plaintiff restates the allegations of paragraphs 1 through 58 of its Complaint as though fully set forth herein.

60.    Plaintiff paid $139,990.00 to Defendants for investing in and purchasing real property.

61.    Defendants failed to deliver any real property to Plaintiff or pay him his intial investment or ROI.

62.    Plaintiff's funds conferred a benefit with a value of $139,990.00 upon Defendants.

63.    Defendants appreciated and had full knowledge of the benefit that Plaintiff conferred upon them as well as the value of such benefit.

64.    Defendants' acceptance and retention of the funds without delivering title to the real properties as expected makes it inequitable for Defendants to retain the benefits without refunding the total amount paid by Plaintiff.

65.    Defendants are liable to Plaintiff for unjust enrichment under District of Columbia law.

66.    Defendants' acts have caused Plaintiff damages and unjustly enriched Defendants as alleged.

**WHEREFORE**, Plaintiff requests that this Court enter judgment in its favor and against Defendant in the amount of One Hundred and Thirty Nine Thousand Nine Hundred and Ninety Dollars ($139,990.00) plus a civil penalty, or such other amount that Plaintiff proves at trial, together with interest, legal fees, costs, and disbursements of this action.

## COUNT V
### (Intentional Misrepresentation - Fraud)

67.     Plaintiff restates the allegations of paragraphs 1 through 66 of its Complaint as though fully set forth herein.

68.     Plaintiff confronted Defendants about his funds that Defendants were allegedly holding in the Escrow Account.

69.     Defendants represented to Plaintiff that his funds continued to be held in the Escrow Account and that the amount of his funds in the Escrow Account remained unchanged.

70.     Defendants also represented to Plaintiff that he would get a full refund of his funds if he completed an Escrow Refund Request Form.

71.     Defendants further represented to Plaintiff that he would get a full refund of his funds if he executed a settlement and release agreement.

72.     Defendants knew that their representations were false or made them with reckless disregard for the truth.

73.     Defendants made the false representations to Plaintiff for the purpose of defrauding Plaintiff.

74.     Plaintiff reasonably relied on Defendants' misrepresentations to his detriment.

75.     Plaintiff suffered damages as a direct result of his reliance on Defendants' misrepresentations.

**WHEREFORE**, Plaintiff requests that this Court enter judgment in its favor and against Defendant in the amount of One Hundred and Thirty Nine Thousand Nine Hundred and Ninety Dollars ($139,990.00) plus a civil penalty, or such other amount that Plaintiff proves at trial, together with interest, legal fees, costs, and disbursements of this action. Plaintiff further seeks judgment for three times the amount of Defendants' profits or Plaintiff's damages, whichever is greater, due to the nature of Defendants' conduct.

## COUNT VI
### (Conversion – Wrongfully Withheld Funds)

76.     Plaintiff restates the allegations of paragraphs 1 through 75 of its Complaint as though fully set forth herein.

77.     Plaintiff owned and/or had the right to control the $139,990.00 that is being wrongfully withheld by Defendants.

78.     In wrongfully retaining such funds, Defendants intentionally and substantially interfered with Plaintiff's property interest in the funds to be paid to him in a manner that amounted to depriving Plaintiff of the use and/or possession of such property.

79.     Plaintiff did not consent to such funds being retained and requested the return of the funds wrongfully retained by Defendants, but Defendants refused to return the funds to Plaintiff.

**WHEREFORE**, Plaintiff requests that this Court enter judgment in its favor and against Defendants in the amount of One Hundred and Thirty Nine Thousand Nine Hundred and Ninety Dollars ($139,990.00) plus a civil penalty, or such other amount that Plaintiff proves at trial, together with interest, legal fees, costs, and disbursements of this action.

## DAMAGES

80.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

81.    By reason of Defendants' acts alleged herein, Plaintiff has and will suffer damage.

82.    Defendants have wrongly profited from and been unjustly enriched by their conduct.

83.    Plaintiff is entitled to damages under the common law of the District of Columbia and applicable District of Columbia statutes, including actual and compensatory damages, punitive damages, costs, and reasonable attorneys' fees.

84.    Defendants intend to continue to do the acts complained of herein unless restrained and enjoined.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray:

85.    That this Court award Plaintiff their general, compensatory, special and punitive damages as allowed by law.

86.    That this Court award Plaintiff triple the amount of Defendants' profits or Plaintiff's damages, whichever is greater;

87.    That the costs of this action be awarded to Plaintiff;

88.    That Plaintiff be awarded his reasonable attorneys' fees due to the exceptional and willful nature of this case; and

89.    That this Court grant such other and further relief as it shall deem just.

## DEMAND FOR JURY TRIAL

Trial by jury is hereby demanded for all issues so triable.

## VERIFICATION

I, Robert Stewart, state that the facts contained in this Complaint are true and correct to the best of my information and belief.

By: _____

Robert Stewart

Dated: March 23, 2015

Respectfully submitted,

The Law Offices of RA KERR, PLLC

_____

Roxan A. Kerr
DC Bar No. 490310
444 North Capitol Street, N.W.
Suite 605
Washington, D.C. 20001
Telephone: (202) 629-4137
Facsimile: (202) 621-6212
Email:                               rkerr@rakerrlaw.com

Counsel for Robert Stewart

15

# EXHIBIT A



**E.S. Investment, Inc**
**210 North Lee St Suite 103**
**Alexandria, VA 22314**

Statement Date:          4/8/2014

Account Name          Stewart

**Robert Stewart**
**755 Burton Rd**
**Cumberland, Ontario K4B 1P7**

## STATEMENT OF ACCOUNT

| DATE | DESCRIPTION | CHARGES | CREDITS | ACCOUNT BALANCE |
|------|-------------|---------|---------|-----------------|
| 5/8/2013 | COA-1512 Pulaski St | | | $39,980.00 |
| 05/09/13 | Construction Draw Pulaski St | $10,000.00 | | $29,980.00 |
| 06/11/13 | 188 Line Street Deposit | | $7,990.00 | $37,970.00 |
| 06/19/13 | Construction Draw Pulaski St | $20,000.00 | | $17,970.00 |
| 08/29/13 | Construction Draw Pulaski St | $9,980.00 | | $7,990.00 |
| 08/20/13 | 188 Line Street Investment Contribution | | $32,000.00 | $39,990.00 |
| 12/09/13 | 205/207 Romney Ct Investment Contribution | | $50,000.00 | $89,990.00 |
| 03/28/14 | 1512 Pulaski St Richmond, VA 23222 Payoff | | $50,000.00 | $139,990.00 |

The information above represents all activity on your account. Charges are debits from the account and Credits are deposits to the account. Account Balance is a running total of the current account balance. All charges and credits associated with this account is listed above. For more information regarding your account please call 1-888-945-5933 ext 105 or email Adrena Starnes at starnes@esinvestmentinc.com

Thank you for your business!